UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW I. BRENNAN,

*Plaintiff*,

v.

THOMAS E. WALSH, *et al.*,

*Defendants*.

No. 25-CV-1173 (KMK)

OPINION & ORDER

Appearances:

Matthew I. Brennan
New City, NY
*Pro se Plaintiff*

Darius Patrick Chafizadeh, Esq.
Mathew Thomas Dudley, Esq.
Harris Beach Murtha Cullina PLLC
White Plains, NY
*Counsel for Defendant Thomas E. Walsh*

Eliza Mae Scheibel, Esq.
John Martin Flannery, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
White Plains, NY
*Counsel for Defendants George Hoehmann, Leslie Kahn, Raymond Francis, Craig Johns, Paul Schofield, Denise Weiss, Candi Draper, and Fran Hunt*

KENNETH M. KARAS, United States District Judge:

Matthew I. Brennan ("Plaintiff") brings this Action against George Hoehmann ("Hoehmann"), Leslie Kahn ("Kahn"), Raymond Francis ("Francis"), Craig Johns ("Johns"), Paul Schofield ("Schofield"), Denise Weiss ("Weiss"), Candi Draper ("Draper"), and Fran Hunt ("Hunt") (collectively, the "Individual Town Defendants"), all individuals associated with various government entities in Clarkstown, New York, also sued as a Defendant ("the Town" and together with the Individual Town Defendants, the "Town Defendants"), where Plaintiff

resides, as well as Thomas E. Walsh, Rockland County District Attorney ("Walsh" and collectively with the Town Defendants, "Defendants"), seeking declaratory and injunctive, as well as damages of various types for asserted violations of Plaintiff's constitutional rights stemming from the enforcement of the Town's Zoning Code against Plaintiff. (Compl. 35–36 (Dkt. No. 1).) Before the Court are two Motions to Dismiss filed by the Town Defendants and Walsh. (*See* Mot. to Dismiss ("Walsh Mot.") (Dkt. No. 26); Mot. to Dismiss ("Town Mot.") (Dkt. No. 23).) For the reasons that follow, the Motions to Dismiss are granted.

## I. Background

### A. Materials Considered

When he filed the Complaint, Plaintiff attached numerous exhibits meant to substantiate his claims. (*See, e.g.*, Compl., Ex. A (Dkt. No. 1-1); *id.*, Ex. B (Dkt. No. 1-2); *id.*, Ex. W (Dkt. No. 1-23).) Plaintiff further included factual allegations in his responsive papers. (Pl.'s Opp'n to Rockland County District Attorney Mem. ("Pl.'s Opp'n to Walsh Mem.") (Dkt. No. 34); Pl.'s Opp'n to Clarkstown Defs.' Mem. ("Pl.'s Opp'n to Town Mem.") (Dkt. No. 35).) The Court's analysis begins, therefore, with a determination of which documents and allegations it should properly consider in deciding the instant Motion.

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves" on the basis that "[t]o go beyond the allegations in the [c]omplaint would convert the Rule 12(b)(6) motion to dismiss into one for summary judgment pursuant to [Federal Rule of Civil Procedure] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citation omitted). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the [c]omplaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary

judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . . , documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (citation and quotation marks omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'" (alteration adopted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

When reviewing a complaint submitted by a pro se plaintiff, the Court is less constrained in the materials it may consider. It may look to "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including "[the plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997), "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted) (citation omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the plaintiff's] possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation and quotation marks omitted).

In light of the fact that Plaintiff is proceeding pro se, the Court will consider the exhibits attached to the Complaint. *Akinlawon v. Polonco*, No. 21-CV-2621, 2023 WL 6216724, at *2

(S.D.N.Y. Sept. 25, 2023) (considering exhibits attached to a pro se complaint when deciding a motion to dismiss); *see also Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 560 n.3 (S.D.N.Y. 2023) (considering exhibits that were attached to a complaint in connection with deciding a motion to dismiss). For that same reason, the Court will also consider the factual assertions raised for the first time in Plaintiff's Opposition papers. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion." (italics omitted) (citation omitted)); *Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to an opposition brief given the plaintiff's pro se status); *Gadson*, 1997 WL 714878, at *1 n.2 (noting it is "appropriate to consider" a pro se plaintiff's "additional materials, such as his opposition memorandum"). Of course, even where the Court considers these assertions, to be credited they nevertheless must satisfy the standards appropriate on a Motion to Dismiss, as described further below.

In addition to the Exhibits attached to Plaintiff's Complaint, the Court takes judicial notice of the Clarkstown Zoning Map, schedule of zoning, and legislative history materials outlining the history of amendments thereto. *See* Town of Clarkstown, Planning Department (last visited Aug. 26, 2026), https://www.clarkstown.gov/planning/ (select "Mapping & GIS," then select "Zoning Map"); Town of Clarkstown, Table 1, Residential Zoning Districts Land Use (last visited Sept. 9, 2026), https://ecode360.com/attachment/335009/CL0028-290t%20Table%201%20Res%20Zoning%20Dist%20Land%20Use.pdf [https://perma.cc/F8N6-7ECJ]; Town of Clarkstown Agenda & Minutes (last visited Aug. 26, 2026) https://clarkstown.primegov.com/public/portal (navigate to 2018 records, select records for "Town Board – Regular Meeting" dated Apr. 10, 2018; navigate to 2019 records, select records

for "Town Board – Regular Meeting" dated Apr. 9, 2019; navigate to 2024 records, select records for "Town Board – Regular Meeting" dated June 24, 2024). These materials are properly before the Court on a Motion to Dismiss because a court may "'take judicial notice of relevant matters of public record,' including municipal land records in an appropriate case." *Witt v. Stefonski*, No. 22-CV-1489, 2022 WL 22863353, at *2 (D. Conn. Dec. 28, 2022) (citation omitted) (quoting *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012)). *See also 76 Route 6 Holdings Inc. v. Town of Yorktown*, No. 25-CV-693, 2026 WL 867180, at *4 (S.D.N.Y. Mar. 30, 2026) (determining "meeting minutes or agendas from public meetings" were "properly subject to judicial notice . . . for the limited purposes of determining actions taken by the relevant parties, not for the truth of any statements made during the meeting" and collecting cases); *Komondy v. Gioco*, 253 F. Supp. 3d 430, 445 n.8 (D. Conn. 2017) (explaining that "[a] district court may take judicial notice of all documents in the public record, including the provisions of the Town zoning code" (quotation marks omitted, alterations adopted)); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691–92 (S.D.N.Y. 2011) ("The Court may . . . take judicial notice of village and town maps, resolutions, and declarations.").

B. Factual Background

Plaintiff owns real property in Clarkstown, New York—a home located at 23 Germonds Road (the "Property"),[1] which he acquired in 1997. (Compl. ¶ 4; *id.* Ex. B, at 3.)[2] The Property

[1] Plaintiff's address is in New City, a hamlet of the town of Clarkstown. (*See* Compl. ¶ 4.) *See New City, New York*, Wikipedia, https://en.wikipedia.org/wiki/New_City,_New_York [https://perma.cc/XZ3V-3R2W] (last visited Aug. 26, 2026) (noting that New City is a hamlet and census-designated place in the town of Clarkstown, New York).

[2] In citing to materials from the record, the Court cites the page numbers or paragraph numbers used on those documents themselves. When citing documents that are not themselves paginated, the Court cites to the ECF-stamped page number in the upper-right corner of each page.

originally was a single-family home. (*Id.* Ex. B, at 3.) At some point in the 2000s, he converted the single-family residence to a two-family residence, (mistakenly) understanding a permit he obtained that permitted him to add a second kitchen to the home as allowing him to convert the home to a two-family residence. (*See id.* at 5; Dkt. No. 35 at 18 (claiming, without citation to any authority, that "after [the] addition of [the] [s]econd [k]itchen[,] [the] [P]roperty was [automatically] reclassified to a code 215 year round accessory apartment[,] which is . . . a legal form of a two[-]family residence," a legal conclusion that this Court is not bound to credit).) Plaintiff's own allegations, as well as materials properly considered on a Motion to Dismiss, reveal that the Property sits in the center of the Town's R-22 Zone. (*See* Town of Clarkstown, Planning Department (last visited Aug. 26, 2026), https://www.clarkstown.gov/planning/ (select "Mapping & GIS," then select "Zoning Map," then navigate to 23 Germonds Road); Compl. ¶ 20.) Further, the Town's Zoning tables state plainly that the R-22 zone permits single-family detached residences and does not permit two-family residences. *See* Town of Clarkstown, Table 1, Residential Zoning Districts Land Use, https://ecode360.com/attachment/335009/CL0028-290t%20Table%201%20Res%20Zoning%20Dist%20Land%20Use.pdf, (last visited Sept. 9, 2026).[3]

---

[3] Although the Town's Zoning Table has been amended multiple times, none of those amendments bore on the zoning of Plaintiff's property for single-family or two-family uses. *See* Town of Clarkstown Agenda & Minutes (last visited Aug. 26, 2026) https://clarkstown.primegov.com/public/portal (navigate to 2018 records, select meeting minutes for "Town Board – Regular Meeting" dated Apr. 10, 2018, navigate to pages 15–16; navigate to 2019 records, select the "Packet" for "Town Board – Regular Meeting" dated Apr. 9, 2019, navigate to pages 3–4; navigate to 2024 records, select meeting minutes for "Town Board – Regular Meeting" dated June 24, 2024, navigate to pages 2–3 (note that the 2024 amendment involved a change to the R-22 lot, but only to a specific parcel's commercial use)).

Despite Plaintiff's conversion of his home to a two-family residence in the 2000s in violation of the Town's Zoning Schedule, he did not face any action from the Town until October 2016. (Compl. ¶ 16.) In that month, Defendant Francis, a part-time code enforcer for the city, served Plaintiff with a notice for violation of the Town code. (*Id.*)[4] Plaintiff says that the provision of the code cited in this violation notice "did not exist." (*Id.*) "The primary charge against" Plaintiff was "turning a single-family house with only one set of utility meters into a two-family house." (*Id.*) Plaintiff further specifies that subsequent violations were issued based on the understanding that his property was in an "R-15 zone" area "when the house is located in an R-22 zone." (*Id.* ¶ 20.) Nevertheless, Plaintiff concedes that the R-22 Zone does not permit two-family homes. (Pl.'s Opp'n to Town Mem. 4 ("With regards to Plaintiff's property at 23 Germonds Road, New City, New York 10956 said property is in an R-22 zone which does not permit Two Family Homes . . . .").)[5]

Relatedly, Plaintiff has a longstanding political feud with Clarkstown's Town Supervisor, Defendant Hoehmann. (Compl. ¶ 25; *see also id.* ¶ 16 (describing the two as "political rival[s]").) *See People v. Brennan*, 200 N.Y.S.3d 923, 923 (Just. Ct. 2023) (describing "the harrowing, antecedent procedural history" of state court proceedings stemming from this

[4] The Town Defendants filed a copy of this notice in conjunction with their Motion to Dismiss, (Decl. of Eliza M. Scheibel, Esq. in Supp. re: Mot. to Dismiss ("Scheibel Decl."), Ex. B (Dkt. No. 24-2)); this document would be properly before the Court because it is incorporated by reference in the Complaint, which purports to rely on its terms and effect to argue that the actions taken against Plaintiff were unconstitutional, (*see* Compl. ¶¶ 16–21). It reveals that the notice was dated December 29, 2016. (Scheibel Decl., Ex. B.) However, this discrepancy is irrelevant to the claims before the Court, and so the Court retains the date alleged in Plaintiff's Complaint.

[5] The Court notes that the R-15 zone, too, is zoned for single-family homes and does not permit two-family homes. *See* Town of Clarkstown, Table 1, Residential Zoning Districts Land Use, https://ecode360.com/attachment/335009/CL0028-290t%20Table%201%20Res%20Zoning%20Dist%20Land%20Use.pdf, (last visited Sept. 9, 2026).

selfsame feud). The "ancient grudge" from whence "break[s] [the] new mutiny" of this suit, *see* William Shakespeare, Romeo and Juliet, prologue, l.3, appears to be Hoehmann's housing policy, (*see* Compl. ¶ 10 (faulting Hoehmann for failing to pass a proposed housing law); *id.* ¶¶ 11–13 (criticizing other local legislation, including a law that permitted the Town to collect information on the identities of individuals who lived in specific residences).) Hoehmann made the campaign promise that he would prevent Clarkstown from acquiring the reputation of the neighboring town of Ramapo for "unaddressed" and "excessive building code violations." (*Id.* ¶¶ 9, 13.) When elected, Hoehmann undertook a concerted campaign to transform the Clarkstown Building Department into his own "military wing" to make good on this promise. (*Id.* ¶ 13.)

As part of the scheme, Hoehmann adopted a policy that pertained to homeowners whose homes were assessed for tax purposes as "one family, year round residence with a secondary self contained dwelling unit," *i.e.*, properties that were originally single family homes but where the owners have construed what are commonly known as "accessory dwelling units," "ancillary dwelling units," or "ADUs." (*Id.* ¶ 10.) *See* NYC Hous. Pres. & Dev., *Plus One Ancillary Dwelling Unit (ADU) Program*, https://housing.hpd.nyc.gov/adu [https://perma.cc/EW5R-7HY6] (last visited Sept. 12, 2026) ("An Ancillary Dwelling Unit (ADU), also known as an Accessory Dwelling Unit, is a small building on the same lot as your main house, like a backyard cottage, basement apartment, garage conversion, or attached addition."); N.Y. State Dep't of Tax. & Fin., *Property type classification codes*, http://tax.ny.gov/research/property/assess/manuals/prclas.htm#residential [https://perma.cc/HH6N-EPRJ] (last visited Aug. 26, 2026) (describing tax code 215, repeatedly referenced by Plaintiff, as the applicable state tax classification for a "one family, year round

residence with a secondary self contained dwelling unit," typically an "[a]ccessory apartment . . . contained within or added to the principle [*sic*] residence"). While Plaintiff does not specify the nature of this policy change, he says that it prevents individuals in Clarkstown from occupying those units as intended. (*See* Compl. ¶ 10.) The addition of such an ADU appears to be how Plaintiff converted his single-family home into a two-family home. (*See id.* ¶¶ 10, 16.) Due to the policy, Plaintiff says that he and others whose properties contain ADUs are being deprived of their property rights, and are subject to "taxation without utilization." (*Id.* ¶¶ 14–15 (capitalization altered).) It appears that Plaintiff believes that this policy change motivated the issuance of the initial notice of violation related to the Property. (*See id.*)

On or around May 23, 2017, Plaintiff applied for a use variance to permit the Property to be a "two family" building, "without any structural change," but this application was denied. (*Id.* ¶ 21.) The Town's final decision was filed on November 9, 2017, after an appeal by Plaintiff to the Clarkstown Zoning Board of Appeals. (*Id.* ¶¶ 22–23; *see also* Compl., Ex. F, at 2 (Dkt. No. 1-6) (decision and order from the Supreme Court of the State of New York, County of Rockland, describing a decision dated September 11, 2017 filed with the Town Clerk's office on November 9, 2017).)[6] On December 8, 2017, Plaintiff filed an Article 78 Petition regarding the denial of his variance application in state court. (Compl. ¶ 23.) Plaintiff's Article 78 Petition was eventually denied. (*Id.* ¶ 27.) Plaintiff sought an appeal to the Appellate Division, Second Department, which affirmed the denial of the variance in a decision dated April 7, 2021. *See*

[6] Plaintiff glancingly claims that Defendant Kahn violated a purported automatic stay in by filing an enforcement action stemming from these actions during the time that Plaintiff could decide whether he wanted to file the Article 78 proceeding, (Compl. ¶ 24); however, the law that purportedly provides for that stay, New York Town Law § 267-a(6), does not provide for a stay in such circumstances, but simply "stay[s] all proceedings in furtherance of the action appealed from."

*Brennan v. Hobbs*, 141 N.Y.S.3d 890 (App. Div. 2021). Plaintiff's subsequent appeal to the New York Court of Appeals was dismissed on September 9, 2021. *See Brennan v. Hobbs*, 174 N.E.3d 692 (N.Y. 2021).

While Plaintiff's efforts to obtain the variance and appeal the denial thereof were ongoing, on December 5, 2017, Defendant Francis issued additional citations to Plaintiff for violations of the building code. (Compl. ¶ 24.)[7] Plaintiff was sent a criminal summons, dated December 6, 2017, to answer for violations of the building code, and appeared before a Justice in the Town's Justice Court. (Compl. Ex. E, at 5 (Dkt. No. 1-5).) On December 4, 2019, Plaintiff filed a lawsuit in this District based on substantially similar allegations against largely the same Defendants sued here. *Brennan v. Town of Clarkstown*, No. 19-CV-11115, 2020 WL 4287364 (S.D.N.Y. July 27, 2020). On July 27, 2020, Judge Vincent L. Briccetti dismissed the case in its entirety due to failure to allege the elements required to sustain certain claims, the *Rooker Feldman* doctrine, and *Younger* abstention, as the state court criminal proceedings were still ongoing. *Id.* at *5, *7–9. It appears that Plaintiff's attempt to bring the action before Judge Briccetti halted the state court criminal proceedings, and that they did not resume until September 2021. *Brennan*, 200 N.Y.S.3d at 923 (describing the criminal proceedings in Clarkstown Justice Court as "finally resum[ing]" by "September 2021"). The Clarkstown Justice Court action was then dismissed "when it was determined that pre-trial discovery had not been

[7] Plaintiff claims that the date of the observation leading to these charges was falsified to avoid the applicable statute of limitations, and that Defendant Francis made no additional violation observation aside from the one that led to the late 2016 notice. (Compl. ¶¶ 24–25.) Plaintiff claims that Defendant Francis was aided by Defendant Kahn (then a Town Attorney) at the direction of Defendant Hoehmann. (*Id.*)

exchanged in a timely manner." *Id.* (*See also* Compl. ¶¶ 28–29 (alleging this action was dismissed as the town attorney declined to prosecute the charges).)

In 2022, Defendant Johns, the then-Town Attorney for Clarkstown, along with Defendant Schofield and Defendant Weiss, Deputy Attorneys for the Town, applied for an administrative search warrant for Plaintiff's home. (*Id.* ¶¶ 30–31.) His home was searched on May 2, 2022. (*Id.* ¶ 33.) New proceedings stemming from this warrant proceeded in the Town's Justice Court. (*Id.* ¶¶ 36–40.) Then, the case was transferred to the Justice Court in the Village of Piermont. (*Id.* ¶ 43 (describing transfer from "the four[-]justice Clarkstown operation, a first-class town with a population of 86[,000], to the one[-]justice Piermont evening[-]court[-]only operation[,] [a] second class village with a population of 2[,]5[00]" as "all of the Clarkstown Justices had disqualified themselves").) *See Brennan*, 200 N.Y.S.3d at 923 (describing transfer to the authoring court). Eventually, the Piermont Justice Court dismissed the charges on speedy trial grounds due to the failure to toll certain readiness periods set out by state law. (Compl. ¶ 49.) *Brennan*, 200 N.Y.S.3d at 923.

Plaintiff's Complaint asserts that in both proceedings the state court Justices made various improper legal conclusions. (Compl. ¶¶ 26, 36–40, 47–48.) He challenges the validity of the warrant sought for his home. (*Id.* ¶¶ 30–31.) He argues that the charges were not properly written, and that they were untimely mailed on May 5, 2022. (*Id.* ¶¶ 34–35.) He also takes issue with the transfer of his case from Clarkstown. (*Id.* ¶ 43; *see also* Pl.'s Opp'n to Walsh's Mem. 27 ("Pity the fool who believes in the rule of law in Clarkstown and will not be bullied.").) Additionally, Plaintiff levies a barrage of other underdeveloped allegations at Defendants. He sues Defendant Walsh, the Rockland County District Attorney, on the asserted basis that he "allows the Clarkstown Attorney to prosecute town law cases under his authority, permission,

and supervision." (Compl. ¶ 44.) And he claims that various of the Defendants violated campaign contribution, election, and other laws aimed at reducing corruption and misconduct. (*Id.* ¶¶ 41–42.)

C. Procedural Background

On February 10, 2025, Plaintiff commenced the instant Action. (Compl.) After the Court set briefing schedules for anticipated Motions to Dismiss by the Defendants, (*see* Order dated July 25, 2025 (Dkt. No. 19); Order dated Aug. 4, 2025 (Dkt. No. 22)), Defendants filed the instant Motions on September 2, 2025, (*see* Town's Mot.; Walsh's Mot.), as well as supporting memoranda of law, (*see* Mem. of Law in Supp. re: Mot. to Dismiss ("Town's Mem.") (Dkt. No. 25); Mem. of Law in Supp. re: Mot. to Dismiss ("Walsh's Mem.") (Dkt. No. 28)). On October 2, 2025, Plaintiff filed his opposition memoranda. (*See* Pl.'s Opp'n to Town Mem.; Pl.'s Opp'n to Walsh Mem.) On October 24, 2025, the Defendants filed their reply memoranda. (*See* Reply Mem. in Supp. re: Mot. to Dismiss ("Town's Reply") (Dkt. No. 37); Reply Mem. in Supp. re: Mot. to Dismiss ("Walsh's Reply") (Dkt. No. 38).)

II. Discussion

A. Standard of Review

Although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement." *Id.* (alteration adopted) (quotation marks and citation omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563 (citations omitted), and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). But when a plaintiff proceeds pro se, as noted, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics omitted) (citation omitted).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks and citation omitted). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B. Analysis

In his Complaint, Plaintiff sues pursuant to 42 U.S.C. § 1983 for false arrest, malicious prosecution, the "tort of actual malice," false imprisonment and abuse of process. (Compl. ¶¶ 52–75.) Liberally construed, Plaintiff's Complaint also implicates the Fourteenth Amendment's protections respecting takings, substantive due process, and procedural due process. Accordingly, the Court considers whether any of the allegations in the Complaint and

judicially noticeable materials state facts sufficient to sustain one of these claims against a Motion to Dismiss pursuant to Rule 12(b)(6).

1. Allegations Related to the Initial Notice

To the extent that Plaintiff's Complaint can be read to assert a claim pursuant to 42 U.S.C. § 1983 based upon the citations issued in October 2016 or an asserted deprivation of Plaintiff's property that accrued prior to February 10, 2022 (three years before this Action commenced), those claims are time barred.

"Because Section 1983 'does not provide a specific statute of limitations,' courts 'apply the statute of limitations for personal injury actions under state law.'" *K.W. on behalf of K.A. v. City of New York*, 177 F.4th 127, 150 (2d Cir. 2026) (quoting *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013)). "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Fischer*, 738 F.3d at 517. At the same time, "federal law determines when a Section 1983 cause of action accrues." *K.W. on behalf of K.A.*, 177 F.4th at 150 (wholly quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)) (alteration adopted). "Under federal law, claims brought pursuant to Section 1983 'typically accrue when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Id.* (quoting *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023)).

Insofar as Plaintiff's claim is that he was deprived of his "property without due process" by the denial of the requested variance, "such a claim 'accrues when the plaintiff knew or had reason to know of the property deprivation.'" *Bey v. Westbury Union Free Sch. Dist.*, No. 21-CV-2048, 2022 WL 900615, at *8 (E.D.N.Y. Mar. 28, 2022) (quoting *Tripathy v. City of New York*, No. 20-CV-1646, 2020 WL 1699997, at *2 (S.D.N.Y. Apr. 6, 2020)). Plaintiff was certainly well aware of that deprivation in 2017, when he applied for the requested variance,

(Compl. ¶ 21), and certainly by September 9, 2021, when the New York Court of Appeals declined to hear his appeal from the denial of his Article 78 petition, *Brennan*, 174 N.E.3d 692 —both dates well before the applicable 3-year statute of limitations.[8]

---

[8] Any claim seeking to change the outcome of the Article 78 Petition proceedings would also run afoul of the *Rooker-Feldman* doctrine. This doctrine mandates that "federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005)). It has four components: (1) "the federal-court plaintiff lost in state court"; (2) the plaintiff's complained-of injuries are "caused by a state court judgment"; (3) the plaintiff's complaint "invites review and rejection of that" state court judgment; and (4) the state judgment was rendered prior to the commencement of the district court proceedings. *Id.* (quotation marks and citations omitted) (alterations adopted). *Rooker-Feldman* does not bar independent claims, even if those claims "den[y] a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party," *Exxon*, 544 U.S. at 293, and therefore might properly be understood as subject to issue preclusion, *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 411 (2020) (explaining that issue preclusion "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment"). The Court determines that "[w]ith respect to plaintiff's complaints about the denial of the use variance to convert his single-family home to a multi-family home," insofar as those claims seek the grant of such a variance or a determination that the state courts erred in denying his Article 78 Petition or any rulings made in support thereof, "all four prongs of the Rooker-Feldman doctrine are met." *Brennan*, 2020 WL 4287364, at *5. Plaintiff became a state court "loser" when the state court judge dismissed his Article 78 petition and refused to vacate the decision of the Zoning Board of Appeals. (Compl., Ex. F, at 2.) *Brennan*, 2020 WL 4287364, at *5 (concluding substantively identical claims were subject to *Rooker-Feldman*); *contra Taylor v. Plan. & Zoning Comm'n for Town of Westport*, No. 21-CV-1023, 2023 WL 5507842, at *3 (D. Conn. Aug. 25, 2023) (concluding that *Rooker-Feldman* did not apply to request that would overturn a state court's denial of a zoning appeal as the state court's judgment had already been reversed). Second, insofar as Plaintiff alleges violations of his due process rights with respect to the Zoning Board's denial of a use variance, he is complaining of an injury stemming from the state court decision sustaining that denial. *Brennan*, 2020 WL 4287364, at *5. Third, these allegations "necessarily require the Court to review the state court judgment sustaining the ZBA's decision respecting [P]laintiff's request for a use variance," insofar as that decision determined it was proper to allow the ZBA's decision to stand. *Id.* And fourth, the decision on the Article 78 proceeding was issued "well before [P]laintiff commenced" the 2020 action, and even longer before Plaintiff commenced this Action. *Id.*

To the extent that any of Plaintiff's pleadings can be read to raise a challenge to the denial of the variance that falls outside the scope of *Rooker-Feldman*, those pleadings are subject to res judicata. *See Gould v. Newton*, 802 F. Supp. 950, 953–54 (W.D.N.Y. 1992) (describing applicability of res judicata to Section 1983 actions after prior state court adjudication of a similar action, also in context of Article 78 proceeding).

The same fate awaits any false arrest, false imprisonment, malicious prosecution, or abuse of process claims based on the charges stemming from the 2016 notice. For claims alleging false arrest, the claim "accrues at the time that the alleged false arrest ends." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 601 (E.D.N.Y. 2017); *see also Wallace v. Kato*, 549 U.S. 384, 389 (2007) (holding that a false arrest claim accrued when the "false imprisonment came to an end"). When "the arrest is followed by criminal proceedings," a false arrest claim accrues when "the claimant becomes detained pursuant to legal process" at arraignment. *Wallace*, 549 U.S. at 397. Claims of malicious prosecution accrue when "the underlying criminal action is conclusively terminated." *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995) (citation omitted); *see also Monroe v. Caban*, No. 26-CV-209, 2026 WL 2123042, at *3 (E.D.N.Y. July 23, 2026) (same). And an abuse of process claim accrues either upon the plaintiff's arrest (in the ordinary course) or where the plaintiff learns about the unlawful collateral objective if he learns of it subsequent to the arrest. *Kirton v. City of Mount Vernon*, No. 24-CV-9395, 2026 WL 851374, at *4 (S.D.N.Y. Mar. 27, 2026). Putting aside the fact that Plaintiff has not alleged that he was ever detained as part of those proceedings, (*see generally* Compl.), that action terminated in 2021, *Brennan*, 200 N.Y.S.3d at 923. (*See also* Compl. ¶¶ 28–29.) This Action was not filed until February 10, 2025, more than three years after the termination. (*See generally* Compl.) Accordingly, any malicious prosecution, false arrest, or false imprisonment claims stemming from the 2016 notice and resulting 2017 charges are time-barred. *See Monroe*, 2026 WL 2123042, at *4 (dismissing similar claims filed more than three years after the termination of criminal proceedings).[9] And as to any abuse of process claim, Plaintiff does not supply any

---

[9] The decision to terminate the 2016 notice on non-substantive grounds does not operate to prevent a second prosecution for violation of a town code under New York law. *See Town of*

allegations that would support the conclusion that Plaintiff learned about the unlawful motive at any later date, including because Plaintiff claims a long-standing rivalry between himself and Defendant Hoehmann motivated all of the proceedings. *Cf. Kirton*, 2026 WL 851374, at *4 (liberally construing complaint to support a later date of accrual where "something at the time [the plaintiff] was *acquitted* gave him the requisite notice").

Accordingly, the Court considers whether the remaining allegations in the Complaint state a viable claim for any of the causes of action already identified.

2. Absolute Immunity

Defendants argue that the Town Attorneys—Defendants Kahn, Johns, Weiss, and Schofield—are entitled to absolute immunity. (Town's Mem. 20.) Town attorneys may invoke a prosecutor's absolute immunity when they have been delegated the authority to prosecute the offenses that they did, in fact, pursue. *See Murphy v. City of Elmira*, No. 18-CV-6572, 2023 WL 5938777, at *6 (W.D.N.Y. Sept. 12, 2023) ("[D]elegation to city or town attorneys conveys absolute prosecutorial immunity."). Plaintiff does not challenge that this authority was delegated to the Town Attorneys. (*See generally* Compl.; Pl.'s Opp'n to Town Mem.; Pl.'s Opp'n to Walsh Mem.)

"The Supreme Court has 'stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Buari v. City of New York*, 530 F. Supp. 3d 356, 377 (S.D.N.Y. 2021) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam) (collecting

---

*Huntington v. 807 E. End Realty Corp.*, 958 N.Y.S.2d 649, 649 (Dist. Ct. 2010) ("When a dismissal is granted on a motion by defendant without an adjudication on the facts going to guilt or innocence, re-prosecution is permitted. . . . Additionally, inasmuch as each day that an offense continues, may by definition constitute a separate offense; the defendant has technically not been charged twice with the same offense." (citation omitted)).

cases)). "Immunity may be asserted as a defense in a [Rule] 12(b)(6) motion where the facts supporting the defense appear on the face of the complaint." *Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 108 (N.D.N.Y. 2023) (internal quotation marks and citation omitted) (quoting *Buari*, 530 F. Supp. 3d at 378), *reconsideration denied sub nom. Jeanty v. Bagley*, No. 22-CV-319, 2023 WL 5175832 (N.D.N.Y. Aug. 11, 2023). "The court must draw all reasonable inferences in favor of the plaintiff, including those that defeat the immunity defense." *Id.* (internal quotation marks and citation omitted).

"Absolute immunity protects a prosecutor not only from liability but also from suit." *Ogunkoya v. Monaghan*, 913 F.3d 64, 67 (2d Cir. 2019) (internal quotation marks and citations omitted). "Prosecutors are entitled to absolute immunity from civil suits for damages under § 1983 when functioning as advocates for the state in circumstances intimately associated with the judicial phase of the criminal process." *Burton v. County of Westchester*, No. 21-CV-1475, 2022 WL 2340478, at *3 (S.D.N.Y. June 29, 2022) (alteration adopted) (internal quotation marks and citations omitted); *see also Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) ("Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." (alteration adopted) (internal quotation marks and citation omitted)). Because "the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions," they are covered by absolute immunity. *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Hill*, 45 F.3d at 661 (noting that absolute immunity covers such acts as "initiating a prosecution and presenting the case" in court proceedings). On the other hand, a prosecutor's "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for

judicial proceedings are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also Opoku v. County of Suffolk*, 123 F. Supp. 3d 404, 416 (E.D.N.Y. 2015) ("[A] prosecutor does not enjoy absolute immunity for 'those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate.'") (*quoting Imbler*, 424 U.S. at 430–31). The Court therefore considers the nature of the allegations against Defendants Kahn, Johns, Weiss, and Schofield to determine whether the alleged conduct was advocacy or administerial in nature.

As to Defendant Kahn, Plaintiff alleges that she was hired to advance Hoehmann's housing policies, (Compl. ¶ 13), that she "supervis[ed]" Defendant Francis's changing the date of the "original sworn and witnessed observation" underlying the 2016 notice, (*id.* ¶ 24); that she "fail[ed] to allow [Plaintiff] thirty days to file an Article 78" proceeding, (*id.* ¶ 25); that the state court Justice overseeing the prosecution of the charges stemming from the 2016 notice conformed a decision to certain of her arguments, (*id.* ¶ 26); and that she eventually declined prosecution of the charges stemming from the 2016 notice in 2021, (*id.* ¶¶ 28–29). As already explained, any claims based on the charges stemming from the 2016 notice are time-barred, and therefore not actionable. *See* Section II.B.1, *supra*. In any event, these allegations are plainly within the advocacy function of the prosecutor. *See Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) ("[B]ecause a prosecutor is acting as an advocate in a judicial proceeding, the solicitation and subornation of perjured testimony, the withholding of evidence, or the introduction of illegally-seized evidence at trial does not create liability in damages."); *Shmueli*, 424 F.3d at 237 ("A prosecutor is . . . entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information.'"). Accordingly, she is entitled to absolute immunity.

As to Defendant Johns, the only allegations are that he oversaw the prosecution of Plaintiff stemming from the 2022 notice which, Plaintiff claims, included sealed information and unspecified illegally obtained evidence, and which was ultimately dismissed. (Compl. ¶¶ 30, 42–43, 49.) "If anything is clear in the law of immunity, it is that the prosecutor's decision—malicious or not, with cause or without—to prosecute must be absolutely immune from civil suit." *Powers v. Coe*, 728 F.2d 97, 104 (2d Cir. 1984); *see also Fiorito v. DiFiore*, No. 13-CV-2691, 2014 WL 4928979, at *5 (S.D.N.Y. Oct. 2, 2014) ("A prosecutor's decision not to prosecute is quintessentially 'prosecutorial' and is protected by absolute immunity."). Accordingly, absolute immunity bars all claims asserted against Defendant Johns.

As to Defendant Weiss, Plaintiff alleges that she chose to proceed with prosecuting one of the three charges asserted against him based on the 2022 notice, despite his presenting evidence that the claim should be dismissed, (Compl. ¶ 36); that she "[i]gnored" him when he arrived for an appearance in Clarkstown Justice Court that had been rescheduled (and therefore did not proceed), (*id.* ¶ 43); that she missed a court appearance, (*id.* ¶ 47); and that when she appeared at the next court date, she "still insisted upon prosecuting the case[,]" although Plaintiff thought it should be dismissed based on her failure to appear, "stating the reason for her absence was 'her bad,'" (*id.* ¶ 48). Each of these allegations is related to the decision to prosecute the case and Defendant Weiss's demeanor and conduct during courtroom proceedings. They therefore fall within the scope of absolute immunity, and all claims asserted against Defendant Weiss are barred.[10] *See Burns v. Reed*, 500 U.S. 478, 490 (1991) (describing common law tradition of affording prosecutors immunity for even "false or defamatory statements in judicial

---

[10] The only exception might be Defendant's "ignoring" Plaintiff at the Courthouse, but this is not actionable conduct by any stretch of the imagination.

proceedings”); *Shmueli*, 424 F.3d at 237 (holding that a prosecutor had absolute immunity for the initiation and conduct of a prosecution unless she proceeds “in the clear absence of all jurisdiction”); *Moye v. City of New York*, No. 11-CV-316, 2012 WL 2569085, at *9 (S.D.N.Y. July 3, 2012) (holding that absolute immunity applied to prosecutor’s conduct in the courtroom, even where the prosecutor improperly vouched for witness’s testimony).

Finally, as to Defendant Schofield, Plaintiff alleges that Schofield provided “guidance” in the prosecution stemming from the 2022 notice, (Compl. ¶ 30); that he provided a “one-thousand-page [d]ocument [d]ump” to Plaintiff during that prosecution, made up of “previously [s]ealed [d]ocuments” and designed to intimidate him, (*id.* ¶ 36); and that he used “sealed records” to create an affirmation in the litigation, (*id.* ¶ 37). Each of these allegations is plainly part of the decision to prosecute the case and Schofield’s role as an advocate, even if the actions were undertaken with an improper motive. *See also Lettieri v. Bonanno*, No. 23-CV-1081, 2024 WL 2800226, at *4 n.7 (W.D.N.Y. May 16, 2024) (“Courts have held that prosecutors are absolutely immune from liability based on their actions in turning over or failing to turn over evidence in relation to criminal proceedings.”).[11]

Although this argument was not raised by the Defendants, the Court determines that Defendant Draper is entitled to absolute quasi-judicial immunity for the facts alleged in the Complaint. *See Chambers v. Stynes*, No. 25-CV-2524, 2025 WL 2917109, at *3 (E.D.N.Y. Oct. 14, 2025) (recognizing that claims against a clerk of court may be “foreclosed by the doctrine of quasi-judicial immunity”); *Robinson v. Kotler*, No. 23-CV-10623, 2024 WL 839049, at *2

[11] The Court need not reach Defendants’ argument that Defendant Francis is entitled to qualified immunity, (*see* Town’s Mem. 21–22), because the claims stemming from his actions fail on the merits.

(S.D.N.Y. Feb. 28, 2024) ("[I]t was appropriate for the Court to raise judicial immunity *sua sponte*, particularly where the applicability of the doctrine was clear on the face of the complaint."), *aff'd*, No. 24-555, 2025 WL 686035 (2d Cir. Mar. 4, 2025). "Judges normally have absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities," an immunity that "extends to the actions of court staff, such as court clerks, assisting judges in carrying out their judicial functions." *Chambers*, 2025 WL 2917109, at *3. It applies where a defendant's actions "were judicial in nature and an integral part of the judicial process." *Id.* (quotation marks omitted). Actions that satisfy this test include "granting or denying motions, maintaining the court calendar, and managing the docket." *Cornish v. Tripp*, No. 24-CV-2019, 2025 WL 2108258, at *6 (D. Conn. Mar. 31, 2025), *report and recommendation adopted in relevant part*, 2025 WL 4086032 (D. Conn. Apr. 7, 2025). The Complaint alleges that Draper "should have known" that one of the state court Justices "did not have the legal authority to suppress" an administrative search warrant and should have scheduled the case in front of a different Justice, (Compl. ¶ 38), and that Defendant Draper handed him the transfer order that moved his case to the Piermont court, (*id.* ¶ 43). Both actions fall within the ambit of "maintaining the court calendar, and managing the docket." *Cornish*, 2025 WL 2108258, at *6. Accordingly, she is entitled to absolute, quasi-judicial immunity, and the claims against her must be dismissed.[12]

[12] For this reason, the Court does not reach the Town Defendants' argument that Plaintiff has not pleaded facts that support the personal involvement of Defendant Draper. (Town's Mem. 23–24.)

3. Personal Involvement

The Town Defendants argue that Plaintiff has not pleaded facts that support the personal involvement of Defendants Hoehmann and Hunt. (Town's Mem. 23–24.) Defendant Walsh argues that his personal involvement, too, has not been alleged. (Walsh's Mem. 4.)

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) ("To establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."); *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("[A] plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"). In other words, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti*, 983 F.3d at 620; *see also Washington v. Morley*, No. 21-CV-7159, 2024 WL 4252596, at *4 (S.D.N.Y. Sept. 20, 2024) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under 42 U.S.C. § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional deprivation." (citation and quotation marks omitted, alterations adopted)). Accordingly, "a plaintiff may not rely on a special test for supervisory liability," instead "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 616–18.

As to Defendant Hunt, Plaintiff argues that Hunt "failed to provide a copy of . . . [Defendant] Francis'[s] . . . initial job application, record of initial training[,] and mandatory annual training," which, he says, supports the conclusion that these materials do not exist.

(Compl. ¶ 40 (capitalization altered).) The Court agrees that this allegation is unrelated to the claims Plaintiff raises here, and therefore does not support the conclusion that Hunt was personally involved in any of the asserted rights violations in Plaintiff's Complaint.[13]

The same is true as to the allegations against Defendant Walsh. The allegations as to Walsh's involvement are as follows: "Walsh . . . allows the Clarkstown Attorney to prosecute town law cases under his authority, permission, and supervision," (Compl. ¶ 44); that "[a] letter and e-mail" regarding the charges against Plaintiff were sent to Walsh's office "with no response," (*id.*); that Walsh's office made no "attempt [to] step[] up to stop th[e] runaway train" of the prosecutions against Plaintiff, (*id.* ¶ 46); and that the Republican Party has chosen not to run candidates against Walsh, (*id.*). (*See similarly* Pl.'s Opp'n to Walsh's Mem. 11 (alleging that prior to 2020, certain procedures followed by the DA's Office in allocating this authority were insufficient); *id.* at 26 (alleging Walsh was part of the Clarkstown Republicans' "cadre").) In other words, Plaintiff has not alleged that Walsh directed or was at all involved in the prosecution of the charges against him (and if he had, this might implicate absolute immunity for the same reasons described in II.B.2, *supra*); instead, he has alleged simply that Walsh delegated authority to carry out prosecutions to the Town, and that Walsh's office failed to respond to an email, which is not personal involvement of Walsh at all. *See Rose v. Sapienza*, No. 24-CV-1887, 2026 WL 867149, at *11 (S.D.N.Y. Mar. 30, 2026) (concluding, where DA's office *responded* to an inquiry with a letter signed by a paralegal, that personal involvement of the

[13] The Town Defendants claim that Plaintiff's Opposition "confirms that his allegations against Hunt are based solely on the allegedly inadequate response to his FOIL request." (Town Reply 8.) Plaintiff's Opposition, however, repeatedly asserts that Hunt "failed to provide a copy" of the requested materials "as authorized in a subpoena duces tem [*sic*] signed by" a state court Justice. (Pl.'s Opp'n to Town Mem. 36 (capitalization altered).)

defendant DA had not been sufficiently alleged); *Dowtin v. O'Neil*, 416 F. Supp. 3d 159, 162 (E.D.N.Y. 2017) (dismissing the plaintiff's claims against a defendant district attorney, where the plaintiff failed to plead "facts to demonstrate that . . . [the defendant was] personally involved in any of the violations alleged in the complaint," but was "named in the complaint because of the particular position[] that [he] occup[ied] in the city government"). Nor has Plaintiff alleged that the malicious prosecution—and Walsh's lack of involvement—was due to a specific policy or custom of abdicating responsibility for supervision and oversight of prosecution of zoning offenses, as has been found actionable in some cases. *See Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 162–63 (E.D.N.Y. 2014) (distinguishing between claims brought alleging a policy or custom of non-supervision, which may be actionable under a *Monell* theory, and claims challenging a specific decision to prosecute, which fall within the scope of absolute immunity); *Norton v. Town of Islip*, No. 04-CV-3079, 2009 WL 804702, at *26–27 (E.D.N.Y. Mar. 27, 2009) (substantially same), *rev'd in part on other grounds*, 378 F. App'x 85 (2d Cir. 2010) (summary order). The Court agrees that personal involvement has not been sufficiently alleged as to Defendant Walsh.

The allegations are not so sparse, however, as to Defendant Hoehmann. Plaintiff alleges that Hoehmann "created the Clarkstown Building Task Force," (Compl. ¶ 2), decided to adopt a policy that, Plaintiff claims, led to the issuance of the notices of violation for the two-family layout of his Property, (*id.* ¶ 10), "keeps a running score [of] how many . . . summons [for housing code violations] ha[ve] been issued year[-]to[-]year," *i.e.*, pressures subordinates to issue notices of the type Plaintiff received, (*id.* ¶ 13), and pushed the prosecutions that Plaintiff faced due to political malice, (*id.* ¶¶ 16, 25, 45). The Court will assume for the purposes of deciding this Motion that these allegations are sufficient to support the personal involvement of Defendant

Hoehmann. *See Stone #1 v. Annucci*, No. 20-CV-1326, 2021 WL 4463033, at *8–9 (S.D.N.Y. Sept. 28, 2021) (explaining that an individual may be liable as a policymaker if that individual creates the policy or custom whereby the constitution is violated).

4. False Imprisonment and False Arrest

In his Complaint, Plaintiff raises both claims of false arrest and false imprisonment. (Compl. ¶¶ 52–55, 66–70.) "In analyzing § 1983 claims for unconstitutional false arrest, [courts] have generally looked to the law of the state in which the arrest occurred." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam) (same). Under New York law, "[f]alse arrest and false imprisonment . . . are two names for the same tort." *Blanco v. Success Acad. Charter Schs., Inc.*, 722 F. Supp. 3d 187, 209 (S.D.N.Y. 2024) (wholly quoting *Holland v. City of Poughkeepsie*, 935 N.Y.S.2d 583, 589 (App. Div. 2011)); *see also Jenkins v. City of New York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007) ("False arrest and false imprisonment are largely synonymous because an imprisonment starts at the moment of arrest."). Accordingly, the Court analyzes these two claims together.

When asserted pursuant to 42 U.S.C. § 1983, both claims "derive[] from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly*, 439 F.3d at 151; *see also Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 858944, at *10 (S.D.N.Y. Feb. 29, 2016) (same). "To prevail, a plaintiff must prove four elements: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not contest the confinement[,] and (4) the confinement was not otherwise privileged." *Crews v. County of*

*Nassau*, 996 F. Supp. 2d 186, 203 (E.D.N.Y. 2014) (internal quotation marks omitted); *see also Drayton v. Young*, No. 17-CV-5440, 2018 WL 5831324, at *4 (S.D.N.Y. Nov. 7, 2018) (same).

Plaintiff's claims fail because he has not alleged that he was ever subject to any confinement. (*See generally* Compl.) Indeed, Plaintiff effectively concedes this point in his opposition papers, arguing that "[h]aving to appear in court or face a bench warrant along with having to travel to another town's court . . . is a restraint upon liberty." (Pl.'s Opp'n to Town Mem. 25.) However, it is well established that "a summons requiring even multiple court appearances d[oes] not rise to the level of a seizure," and therefore does not provide the basis for a false arrest claim. *Beck v. City of New York*, No. 12-CV-9231, 2014 WL 80544, at *2 (S.D.N.Y. Jan. 3, 2014) (citing *Burg v. Gosselin*, 591 F.3d 95, 101 (2d Cir. 2010) and *Faruki v. City of New York*, 517 Fed. App'x 1, 1 (2d Cir. 2013) (summary order)). Plaintiff "was not charged with a felony. [He]e was not required to report to anyone. All []he had to do was show up for court appearances . . . . [T]hat [requirement] was no more burdensome than the promise a motorist makes when issued a traffic citation" and therefore is not actionable pursuant to the Fourth Amendment. *Burg*, 591 F.3d at 101 (quoting *Karam v. City of Burbank*, 352 F.3d 1188, 1191 (9th Cir. 2003)). Accordingly, the Court concludes that Plaintiff has not alleged a restraint on his liberty at any point. *Kargbo v. Furno*, No. 15-CV-7101, 2016 WL 4179367, at *1 (E.D.N.Y. Aug. 5, 2016) ("While [the plaintiff] asserts that he was 'arrested,' he makes no factual allegations regarding an arrest or confinement of any sort. Moreover, the minimal factual assertions presented in the complaint strongly suggest that he was *not* arrested and that he simply received a criminal summons to appear in court on one occasion."); *Lacey v. Yates County*, 30 F. Supp. 3d 213, 225 (W.D.N.Y. 2014) (dismissing false arrest claim where there were "no allegations that [the p]laintiff was issued a summons or appearance ticket, or that he was arrested

or detained in any manner"); *Parkash v. Town of Southeast*, No. 10-CV-8098, 2011 WL 5142669, at *6 (S.D.N.Y. Sept. 30, 2011) (denying claim for failure to allege a violation of the plaintiffs' Fourth Amendment rights where the plaintiffs did "not allege their travel was restricted in any way, nor . . . allege they suffered any . . . physical detention in connection with the appearance tickets"), *aff'd*, 468 F. App'x 80 (2d Cir. 2012) (summary order).[14]

5. Malicious Prosecution

Plaintiff also asserts a claim for malicious prosecution in violation of 42 U.S.C. § 1983. (Compl. ¶¶ 56–60.) The elements of a malicious prosecution claim "are governed by state law." *Spak v. Phillips*, 857 F.3d 458, 461 (2d Cir. 2017). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for [the] defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations and quotation marks omitted); *see also Wheeler v. Buckley*, No. 16-CV-7441, 2019 WL 2024005, at *8 (S.D.N.Y. May 7, 2019) (same); *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (same).

As to the claims stemming from the 2022 notice and subsequent charges, Plaintiff has alleged that a search warrant was obtained for his Property. (Compl. ¶ 63.) This warrant establishes a presumption of probable cause, which would be Plaintiff's burden to rebut. *See May v. Levy*, No. 21-CV-3586, 2022 WL 3220368, at *8 (E.D.N.Y. May 12, 2022) ("When an

---

[14] Further, Plaintiff's false arrest and false imprisonment claims fail for the additional reason that he has not pleaded "facts suggesting that an officer did not have probable cause to arrest him," *Randolph v. City Mun. Emps.*, No. 25-CV-4965, 2026 WL 1803932, at *3 (S.D.N.Y. June 18, 2026), as described further in Section II.B.5, *infra*.

arrest occurs pursuant to an arrest warrant, the existence of probable cause is presumed. . . . Plaintiff's complaint fails to overcome the presumption that the indictment and warrant were based on probable cause."), *report and recommendation adopted as modified*, 659 F. Supp. 3d 323 (E.D.N.Y. 2023); *Gonzalez v. United States*, No. 16-CV-1494, 2018 WL 1597384, at *17 (E.D.N.Y. Mar. 31, 2018) (granting a motion to dismiss pursuant to Rule 12(b)(6) where "[t]he complaint fail[ed] to allege facts that, if proven, would rebut the presumption of probable cause established by plaintiff's arrest warrant and his indictment").

Not only has Plaintiff failed to rebut this presumption, he has alleged facts that, if true, would necessitate the conclusion that probable cause existed at the time the 2022 notice was issued. As alleged in Plaintiff's Complaint, his Property is in the Town's R-22 Zone which, he concedes, is zoned exclusively for single-family homes. (Compl. ¶ 20; Pl.'s Opp'n to Town Mem. 4.) When he purchased the Property, it contained a single family home. (Compl. Ex. B, at 3.) Plaintiff does not allege that he ever successfully obtained a variance or permit for a two-family structure on the site; instead, he alleges that his request for a variance was denied, and that he obtained only a permit to build a second kitchen. (*See generally* Compl.). Alterations extensive enough to add a second unit as part of a single-family home would be immediately obvious from the public road abutting Plaintiff's Property—and they were obvious to Defendant Francis. Indeed, the affidavit attached to the 2022 notice of violation confirms that Defendant Francis "observed mail on the front step . . . that was addressed" to individuals who were not members of Plaintiff's family;[15] "multiple vehicles on the premise[s]" and registered to

[15] Plaintiff asserts that Defendant Francis violated the law by standing on his front porch to observe the mail. (Pl.'s Opp'n to Town Mem. 22–23.) Not so. "[A] police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen" such as "the Nation's Girl Scouts and trick-or-treaters," "might do." *Fla. v.*

individuals who were not members of Plaintiff's family, and "two entrances into the [P]roperty." (Compl., Ex. J, at 6 (Dkt. No. 1-10).) At no point does Plaintiff does deny that there was a second family living in the home or otherwise contest any of this information. (*See generally* Compl.; Pl.'s Opp'n to Town Mem.)

Accordingly, and when combined with the allegations that Plaintiff's Property exists in the middle of a single-family-only residential zone and Plaintiff had not obtained a zoning variance, the allegations in Plaintiff's Complaint establish that probable cause existed to issue a notice of violation for the Clarkstown Zoning Code. *Hammer v. Town of Bedford*, No. 25-CV-2618, 2026 WL 100793, at *20 (S.D.N.Y. Jan. 13, 2026) ("Plaintiff does not allege that the apartment does not exist, that it is not actually on the second floor of a detached garage, that it does not have a kitchen and bathroom, or that the Town issued a permit or variance allowing the recreation room to be converted into an apartment; rather, she admits those facts in the [operative complaint.]".), *motion for relief from judgment denied*, 2026 WL 1008392 (S.D.N.Y. Apr. 14, 2026); *Oxman v. Downs*, 999 F. Supp. 2d 404, 415–416 (E.D.N.Y. 2014) (concluding probable cause existed, and therefore dismissing a malicious prosecution claim, where the plaintiff alleged

---

*Jardines*, 569 U.S. 1, 8 (2013) (quotation marks omitted). Additionally, Plaintiff repeatedly argues that Defendant Francis's actions were unlawful because a code enforcer "lacks [a] Common Right of Inquiry," (Pl.'s Opp'n to Town Mem. 15; *see also id.* at 23, 34), apparently referring to the right of inquiry afforded police officers under New York law, *see People v. Hollman*, 590 N.E.2d 204, 205–06 (1992) (describing scope of New York State privacy protections). State rights, however, do not establish the scope of the Fourth Amendment's protections. *See, e.g.*, *Palkimas v. Bella*, No. 08-CV-1836, 2010 WL 2712192, at *5 n.3 (D. Conn. July 6, 2010) ("[T]he Second Circuit has noted that '[a] violation of a constitutional right typically cannot turn on a transgression of state law.'" (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 142 n.6 (2d Cir. 2010)). "Because the plaintiff cannot bring a § 1983 claim based on deprivation of a right under state law," these allegations cannot form the basis of a viable claim. *Sakon v. Connecticut*, No. 22-CV-897, 2025 WL 896832, at *19 (D. Conn. Mar. 24, 2025).

he had clear-cut a parcel of land "of all trees over the course of a few days" and this activity "required a permit if done within 150 feet of freshwater wetlands" under the town code); *Parkash*, 2011 WL 5142669, at *4 (concluding that probable cause existed to issue appearance tickets where the "plaintiffs openly and continuously maintained a property in violation of the town code," and the plaintiffs did not "argue that they ceased their [code-violating] commercial use of the property"); *Edelman v. Page*, No. 00-CV-1166, 2011 WL 13420025, at *2–3, *10 (D. Conn. Apr. 14, 2011) (concluding probable cause existed, and therefore no action for malicious prosecution could lie, where, among other things, a defendant saw the plaintiff working on the roof of a home where a building permit had not been issued).[16]

---

[16] The Court notes that Plaintiff argues that certain acts undertaken by the Town Defendants and described in the affidavit were unlawful—such as obtaining records from Clarkstown Central School District indicating that individuals not related to Plaintiff listed the Property as their home address when registering their child in school. (*See* Compl., Ex. J; Pl.'s Opp'n to Town Mem. 12 (alleging that Defendant Kahn "obtain[ed] Clarkstown School District information . . . protected by the Family Educational Rights and Privacy Act (FERPA)[ ]without a warrant application[, which] . . . was utilized in the 2022 prosecution").) He therefore argues that these materials invalidated any probable cause. (Pl.'s Opp'n to Town Mem. 12.)

Even assuming that Plaintiff is correct that these actions were unlawful, and assuming that the exclusionary rule would apply, probable cause nevertheless would exist because the remaining information described in the affidavit—the legitimacy of which Plaintiff does not meaningfully challenge except as described in note 15 *supra*—supplies probable cause. After all, if there are multiple facts relied upon to establish probable cause and some of those facts are properly excluded as the fruit of the poisonous tree, courts evaluate whether probable cause exists based on the remaining facts that were properly included. *See, e.g.*, *United States v. Caraher*, 973 F.3d 57, 63 (2d Cir. 2020) (applying this approach); *United States v. Walters*, No. 20-CR-89, 2021 WL 869686, at *3 (D. Conn. Mar. 9, 2021) ("It is well established that untrue facts in a search warrant affidavit are not grounds to conduct an evidentiary hearing or to invalidate a search warrant if the remaining facts are enough on their own to establish probable cause."). In any event, the fruit of the poisonous tree doctrine does not apply to claims brought pursuant to Section 1983. *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine cannot link the unreasonable seizure and search to [the plaintiff's] conviction and incarceration because this evidentiary doctrine is inapplicable to civil § 1983 actions."); *Ashley v. City of Bridgeport*, 473 F. Supp. 3d 41, 47 (D. Conn. 2020) ("The exclusionary rule does not apply in civil actions brought pursuant to § 1983."); *Cyrus v. City of New York*, No. 06-CV-4685, 2009 WL 10676441, at *4 (E.D.N.Y. Feb. 9, 2009) ("[T]he

Further, to state a malicious prosecution claim under federal law, the plaintiff must allege that the defendant's conduct resulted in a constitutionally cognizable, post-arraignment deprivation of liberty implicating their Fourth Amendment rights. *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000); *see also Bernshtein v. City of New York*, 496 F. App'x 140, 142 (2d Cir. 2012) (summary order) (same). "Courts have found a cognizable, post-arraignment deprivation of liberty where the individual was detained, or upon the placement of restrictions on the individual's ability to travel." *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 263 (E.D.N.Y. 2015) (citations omitted) (citing *Murphy v. Lynn*, 118 F.3d 938, 944–46 (2d Cir. 1997)). "[I]t is well-established that having to participate in legal proceedings does not in itself amount to a deprivation of a cognizable liberty interest for the purposes of a malicious prosecution claim." *Johns v. Do*, No. 23-CV-3497, 2024 WL 4171023, at *7 (E.D.N.Y. Sept. 12, 2024); *see also Norton*, 97 F. Supp. 3d at 263 (explaining "that having to appear in court, in itself, is insufficient to establish a Fourth Amendment seizure for purposes of a malicious prosecution claim"); *Parkash*, 2011 WL 5142669, at *5–6 (explaining that a plaintiff's being obligated to appear in court is insufficient to establish a deprivation of liberty in the absence of plaintiff's freedom to travel being likewise restricted); *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 227–28 (E.D.N.Y. 2010) (holding that multiple court appearances pursuant to separate summonses did not establish a Fourth Amendment seizure where the plaintiffs were not arrested, detained or restricted with respect to travel), *reconsidered in part on other grounds*, 814 F. Supp. 2d 242 (E.D.N.Y. 2011). So, for the reasons already

exclusionary rule does not apply to the probable cause determination in malicious prosecution claims."). Accordingly, the Court would be at liberty to rely on these assertedly unlawfully obtained pieces of information, which more than supply probable cause in this instance.

explained in the preceding section, Plaintiff has alleged no deprivation of liberty giving rise to a cognizable Fourth Amendment claim. These issues are fatal to Plaintiff's malicious prosecution claim.

6. Actual Malice

Plaintiff asserts a claim for "actual malice." (Compl. ¶¶ 61–65.) "[T]here is no independent claim for relief for 'malice' under New York law." *Wilson v. New York*, No. 15-CV-23, 2017 WL 9674497, at *27 (E.D.N.Y. Jan. 24, 2017), *report and recommendation adopted*, 2018 WL 1466770 (E.D.N.Y. Mar. 26, 2018); *see also Lue v. JPMorgan Chase & Co.*, No. 19-CV-9784, 2021 WL 1108558, at *5 n.8 (S.D.N.Y. Mar. 23, 2021) ("'[A]ctual malice' is not an independent cause of action."); *Marom v. Pierot*, No. 18-CV-12094, 2020 WL 6572509, at *13 n.13 (S.D.N.Y. Aug. 30, 2020) (same), *report and recommendation adopted*, 2020 WL 6565199 (S.D.N.Y. Nov. 9, 2020). Accordingly, this claim is dismissed.

7. Abuse of Process

Plaintiff asserts a claim for abuse of process under § 1983. (Compl. ¶¶ 71–75.) "The Second Circuit recognizes abuse of process as actionable under § 1983." *Kirton*, 2026 WL 851374, at *3. "New York state law supplies the elements of a § 1983 abuse of process claim, which lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Id.* (quotation marks omitted). To satisfy the third element, a plaintiff bringing an abuse of process claim "must claim that [the defendants] aimed to achieve a collateral purpose *beyond or in addition to his criminal prosecution*." *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) (emphasis added); *see also Morales v. City of New York*, 752 F.3d 234, 238 (2d

Cir. 2014) (per curiam) (same). "For abuse of process claims, the Second Circuit distinguishes between an improper *motive*—that is, seeking only to convict or prosecute somebody, but for malicious *reasons*—and an improper *purpose*—that is, seeking some end external to the criminal process." *Kirton*, 2026 WL 851374, at *4; *see also Caraballo v. City of New York*, 726 F. Supp. 3d 140, 167 (E.D.N.Y. 2024) ("Examples of a collateral objective include the infliction of economic harm, extortion, blackmail, and retribution." (internal quotation marks and citation omitted)).

In his Complaint, Plaintiff identifies no improper purpose besides his prosecution and conviction, but rather a flawed motive (self-promotion and pursuit of Defendant Hoehmann's policy goals) in pursuing the claims. (*See generally* Compl.) These allegations "do[] not suffice because a 'malicious motive alone does not give rise to a cause of action for abuse of process.'" *Kirton*, 2026 WL 851374, at *4 (quoting *Hernandez v. United States*, 939 F.3d 191, 204 (2d Cir. 2019)); *see also Crews v. County of Nassau*, No. 06-CV-2610, 2007 WL 4591325, at *12 (E.D.N.Y. Dec. 27, 2007) ("Because [the] plaintiffs have merely alleged that [the] defendants were motivated by their desire to cover up their misdeeds, but not that [the] defendants had a purpose other than to prosecute [the plaintiffs], the abuse of process claim fails.").

8. Due Process

To the extent that Plaintiff's Complaint could be read to assert a due process claim based on the charges stemming from the 2022 notice, this claim, too, must be dismissed. "Where a due process claim is 'based on the same conduct that gave rise to a plaintiff's false arrest and malicious prosecution claims,' the due process claim should be dismissed 'as both duplicative and meritless.'" *Crespo v. Rivera*, No. 16-CV-708, 2018 WL 4500868, at *14 (S.D.N.Y. Sept. 19, 2018) (quoting *Osuna v. City of New York*, No. 08-CV-4759, 2009 WL 2356424, at *6

(S.D.N.Y. July 30, 2009)) (alterations adopted); *see also Ambrose v. City of New York*, 623 F. Supp. 2d 454, 474 n.9 (S.D.N.Y. 2009) (dismissing procedural due process claim "because New York allows Plaintiff to sue in tort for false arrest and malicious prosecution"). The Court accordingly concludes that, "[h]ere, Plaintiff's due process claim is duplicative of his false arrest, false imprisonment, [and] malicious prosecution" claims that have already been dismissed. *Crespo*, 2018 WL 4500868, at *14.

9. Res Judicata

In his Opposition to the Town's Memorandum, Plaintiff asks the [C]ourt to consider whether the Clarkstown Building Department's asserted "policy of Taxation without Utilization" is unconstitutional. (Pl.'s Opp'n to Town Mem. 40.) Defendants correctly argue that "Plaintiff's argument that he was being deprived of his constitutionally protected right to utilize his property in the manner in which he is being taxed was previously considered and rejected by [Judge Briccetti] in his 2019 Action against the Town." (Town's Reply 9.) The Court agrees that this claim is barred by res judicata and may not be raised here. "*Res Judicata* will bar subsequent litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Bronzini v. Classic Sec., LLC*, No. 11-CV-2096, 2012 WL 1681745, at *4 (S.D.N.Y. May 2, 2012) (wholly quoting *Overview Books, LLC v. United States*, 438 F. App'x. 31, 33 (2d Cir. 2011) (summary order)). As already described, *see* Section I.B, *supra*, Plaintiff raised exactly the same claim in his earlier federal case involving the same parties. The Court was undoubtedly a court of competent jurisdiction, and Judge Briccetti reached the merits of this claim. *See Brennan*, 2020 WL 4287364, at *7–9. Accordingly, *res judicata* applies and bars this claim from being raised again here.

10. *Monell*

To state a *Monell* claim, a plaintiff must allege an underlying civil rights claim against an individual defendant that is an officer, agent or employee of the municipal defendant. *See Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2012) ("*Monell* does not create a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from that policy."); *Fappiano v. City of New York*, 640 F. App'x 115, 121 (2d Cir. 2016) (summary order) ("[I]n the absence of an underlying constitutional violation by a [municipal] employee there is no municipal liability under *Monell*."); *Johnson v. City of New York*, 551 F. App'x 14, 15 (2d Cir. 2014) (summary order) (same). For the reasons already described, Plaintiff has not alleged a viable civil rights claim against an individual defendant that is an officer, agent or employee of the Town. Accordingly, to the extent that Plaintiff's Complaint could be read to raise a claim under *Monell*, the claim must be dismissed.

11. State Law Claims

Although not raised by Defendants, the Court notes that Plaintiff cites three New York State laws that, he claims, Defendants violated. (Compl. ¶ 42.) For the reasons the Court has already explained, there is no viable federal claim in this action, so the Court declines to exercise supplemental jurisdiction to consider whether Plaintiff's Complaint raises a viable state law claim of any type. *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 31–32 (2025) ("[I]f the district court has dismissed all claims over which it has original jurisdiction . . . although supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court." (quotation marks omitted)).

## III. Conclusion

For the reasons set forth above, the Motions to Dismiss are granted. The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 23 and Dkt. No. 26. As this is Plaintiff's first adjudication on the merits of the majority of the claims asserted here (save the challenge to Clarkstown's tax policies, which is barred by res judicata), the dismissal is without prejudice. *See Stiler v. Amalgamated Life Ins. Co.*, No. 24-CV-8962, 2026 WL 867166, at *22 (S.D.N.Y. Mar. 30, 2026) ("In light of the fact that this is the first time Defendants have moved to dismiss Plaintiff's claims on the merits, the dismissal is without prejudice."). If Plaintiff wishes to file an Amended Complaint alleging additional facts and otherwise addressing the deficiencies the Court has identified, Plaintiff must do so within 30 days of the date of this Order. The amended complaint will replace, not supplement, the previous complaints. *See id.* The failure to timely file an amended complaint may result in the dismissal of this Action with prejudice.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge